UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| DINAH STALLWORTH-LEWIS | CASE NO. 1:22-cv-1321 |
| -vs- | JUDGE DRELL |
| THOMAS VILSACK, SECRETARY, U.S. DEPARTMENT OF AGRICULTURE | MAGISTRATE JUDGE PEREZ-MONTES |

## MEMORANDUM RULING AND ORDER

Before the Court is a "Motion to Dismiss, or in the Alternative, for Summary Judgment" filed by Defendant Thomas Vilsack, Secretary for the U.S. Department of Agriculture. (Doc. 8). Having considered the motion, Plaintiff Dinah Stallworth-Lewis's opposition, Defendant's reply, and the applicable law, the Court finds that Defendant's motion to dismiss should be **GRANTED** but subject, in part, to the right to amend. Plaintiff's request for leave to amend her complaint should be **GRANTED**.

## I.     RELEVANT BACKGROUND

This is an employment discrimination suit involving two main complaints. The first deals with what is perceived as a wrongful withholding of a promotion. The second chronicles ongoing discrimination, harassment, and cyberbullying, creating a hostile work environment. (Docs. 1, 16).

### A.  Failure to Promote Claim

Plaintiff Dinah Stallworth-Lewis ("Stallworth-Lewis") alleges that she was wrongfully denied a promotion within the U.S. Department of Agriculture Rural Development ("RD" or "Agency") in Natchitoches, Louisiana, where she has been employed since May 9, 2011. She has held her current position as a Loan Specialist, Realty 1165-GS-9 ("Step 9 Loan Specialist") since March 15, 2020. As a result of her tenure and performance with the Agency, she became eligible

1

for promotion to Step 11 Loan Specialist in March 2021. That same month, Ms. Stallworth-Lewis emailed her first-line supervisor, Linda Broussard ("Broussard"), requesting the promotion but received no response. (Doc. 1). In early April 2021, Ms. Stallworth-Lewis emailed Ms. Broussard and her second-line supervisor, Byron Waters ("Waters"), requesting a meeting to discuss, among other things, her possible promotion. (Docs. 1, 8-1, 16). All three met via videoconference in late April 2021. During that meeting, Ms. Lewis renewed her request for a promotion to Step 11 Loan Specialist. At that meeting, Mr. Waters explained to Ms. Broussard that reasons for delaying, denying, or otherwise refusing Ms. Stallworth-Lewis's promotion must be reduced to writing, as required by the Agency's policies. Ms. Broussard eventually took Mr. Waters's advice. On April 11, 2022, roughly one year after their meeting, Ms. Broussard emailed Ms. Stallworth-Lewis her reasons for not promoting her to Step 11 Loan Specialist. (Doc. 1). In the months leading up to Ms. Broussard's written notification, Ms. Stallworth-Lewis contacted several persons about her promotion denial, including her third-line supervisor, Ernie Wetherbee. She even recorded the claim in an Equal Employment Opportunity ("EEO") complaint in August 2021. See discussion *infra* Section I.B.

## B. **Hostile Work Environment Claim**

The second part of Ms. Stallworth-Lewis's complaint references some events relating to Ms. Broussard's decision not to promote her. However, much of it stretches back to 2019. Since then, Ms. Stallworth-Lewis has filed two formal EEO complaints alleging racially motivated discrimination, harassment, and cyberbullying. In the 2019 complaint, she named members of the information technology ("IT") staff as the culprits of this misconduct. And although this EEO complaints was resolved, Ms. Stallworth-Lewis contends that she continued to suffer from the

same kind of discrimination, harassment, and cyberbullying; only this time, the IT staff's behavior eventually impacted her ability to perform her job duties competently and efficiently. (Doc. 1).

Beginning in February 2021, Ms. Stallworth-Lewis alerted Ms. Broussard of the ongoing harassment she suffered at the hands (or clicks) of the IT staff. She informed her supervisor that the "[cyber]attacks" she had experienced limited her access to essential applications on her work computer. (Doc. 1). During that time, Ms. Stallworth-Lewis contacted some of the same IT staff members she had previously accused of cyberbullying and digital misconduct. But, she claimed, no one came to her aid while she languished at home in digital distress.[1] (Doc. 1). On March 22, 2021, Ms. Stallworth-Lewis contacted an EEO counselor to report that she was being "targeted, bullied, retaliated against, harassed, and [was] suffering from a hostile work environment related to the technology issues she continuously experienced." (Doc. 1). Additionally, at various times throughout March 2021, Ms. Stallworth-Lewis notified Ms. Broussard of these issues, often in the same communications where she inquired about the status of her promotion. Ms. Stallworth-Lewis made at least two requests to Ms. Broussard to discuss the cyberbullying she endured from IT staff but was met with no response. (Doc. 1).

Unfortunately, according to her claim, Ms. Stallworth-Lewis's technology woes continued. In an April 2021 email to Ms. Broussard and Mr. Waters, she requested a meeting to discuss her promotion and the "ongoing cyber-bullying [*sic*]." (Doc. 1). As mentioned above, the trio finally met virtually in April 2021 to discuss these topics, where Mr. Waters advised Ms. Broussard to provide Ms. Stallworth-Lewis with written reasons for delaying, denying, or otherwise refusing

---

[1] As was the practice for many federal agencies during peak periods of virus transmission during the COVID-19 pandemic, RD allowed employees to work remotely to mitigate the spread of the virus.

her promotion. However, her concerns about the alleged harassment and cyberbullying by the IT staff went largely unaddressed. (Doc. 1).

By June 1, 2021, Ms. Stallworth-Lewis had converted her informal EEO complaint to a formal one, enumerating a litany of claims. Broadly, those claims involved (1) discrimination and harassment by her superiors for her prior EEO activity; (2) harassment and cyberbullying by the IT staff; and (3) cyberattacks by the IT staff on Ms. Stallworth-Lewis's personal computer. As noted above, in August 2021, she amended the formal complaint to provide the adverse employment action resulting from the alleged discrimination and harassment engaged by Ms. Broussard and Mr. Waters—nonselection for the noncompetitive Step 11 Loan Specialist position. (Doc. 8-10). An internal investigation into Ms. Stallworth-Lewis's claims occurred, and a report was issued on November 1, 2022. Ms. Stallworth-Lewis then requested a Final Agency Decision ("FAD") from the EEOC, which was issued on February 16, 2022 and found the support for Ms. Stallworth-Lewis's claims to be insufficient. But, the EEOC issued a "Right to Sue" letter in accordance with standard protocol. Consequently, she filed the instant action with this Court on May 17, 2022. (Doc. 1).

## II.   APPLICABLE LAW

### A.   Motion to Dismiss under Rule 12(b)(1) Standard

Motions filed pursuant to Federal Rule of Civil Procedure 12(b)(1) allow a party to challenge the subject matter jurisdiction of the district court to hear a case. Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001); see also FED. R. CIV. P. 12(b)(1). A district court may dismiss an action for lack of subject matter jurisdiction on any one of the three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record;

or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. Ramming, 281 F.3d at 161.

The burden of proof for a Rule 12(b)(1) motion to dismiss falls on the party asserting jurisdiction. Id. (internal citation omitted). Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does exist. Id. (citing Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir. 1980)).

In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact that may be disputed. Id. (citing Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981)). Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain the plaintiff cannot prove any facts supporting her claim that would entitle her to relief. Id. (citing Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss., 143 F.3d 1006, 1010 (5th Cir. 1998)).

Under Rule 12(b)(1), a court has wide discretion to review affidavits and other documents outside of the pleadings, as well as to conduct a limited evidentiary hearing, to resolve disputed jurisdictional facts. In such instances, a court's reference to evidence outside the pleadings does *not* convert the motion to a Rule 56 summary judgment motion." Martin v. Napolitano, No. 11-CV-1368, 2012 WL 1413579, at *3 (W.D. La. Apr. 2, 2012), *report and recommendation adopted*, No. 11-CV-1368, 2012 WL 1413162 (W.D. La. Apr. 23, 2012) (citing Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995)) (emphasis added); see also Montez v. Dep't of Navy, 392 F.3d 147, 149 (5th Cir. 2004) ("[W]here subject matter jurisdiction is being challenged, the trial court is free to weigh [the] evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case. No presumptive truthfulness attaches to the plaintiff's allegations.").

**B.  Motion to Dismiss under Rule 12(b)(6) Standard**

Under Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of her claim that would entitle her to relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. However, the court does not accept as true legal conclusions or mere conclusory statements, id., and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." S. Christian Leadership Conf. v. Sup. Ct. of the State of La., 252 F.3d 781, 786 (5th Cir. 2001) (citing Fernandez v. Allied Pilots Ass'n, 987 F.2d 278, 284 (5th Cir. 1993)). "[T]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements" or "naked assertion[s] devoid of further factual enhancement" are not sufficient." Iqbal, 556 U.S. at 663, 678 (internal citations omitted). In summary, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." Id. (quoting FED. R. CIV. P. 8(a)(2)). If the complaint otherwise shows a bar to relief, then dismissal is appropriate. Cutrer v. McMillan, 308 F. App'x 819, 820 (5th Cir. 2009) (per curiam) (quoting Clark v. Amoco Prod. Co., 794 F.2d 967, 970 (5th Cir. 1986)).

Additionally, the Supreme Court has rejected the argument that "a Title VII complaint requires greater 'particularity,' because this would 'too narrowly constrict the rule of the pleadings.'" McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 283 n.11 (1976). "[T]he ordinary rules of assessing the sufficiency of a complaint apply" even in the employment discrimination context, and such plaintiffs "need not plead a prima facie case in order to survive a Rule 12 motion." Id. Federal courts reviewing the sufficiency of a complaint are limited to determining "not whether a plaintiff will ultimately prevail but whether the claim is entitled to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

## III.    ANALYSIS

Ms. Stallworth-Lewis's claims amount to employment discrimination claims based on (1) Louisiana law and (2) Title VII of the Civil Rights Act of 1964 ("Title VII"). Moreover, Plaintiff's federal employment discrimination claims are rooted in theories of (a) reprisal (or retaliation) and (b) a hostile work environment that allegedly developed, in large part, because of race-based harassment and resulting denial of promotion. We will discuss each of her claims and Defendant's related dispositive motions in turn.

### A.  **Plaintiff's state employment discrimination claim is preempted by Title VII, and the Court lacks jurisdiction to adjudicate the claim.**

Ms. Stallworth-Lewis's claim based on Louisiana employment anti-discrimination law, is jurisdictionally barred from consideration before this Court. As a federal employee, her exclusive remedy for an employment discrimination claim rests in Title VII. When a plaintiff relies on the same facts to establish a Title VII claim against a federal employer and a claim based on state anti-discrimination laws, the state law claim is "not sufficiently distinct to avoid" preemption. See Brown v. Gen. Servs. Admin., 425 U.S. 820, 829 (1976). Here, it is undisputed that Ms. Lewis is employed as a Step 9 Loan Specialist with RD—a federal agency. (Doc. 1). Since the federal

government employs her, any claims related to employment discrimination must be brought under Title VII. See Brown, 425 U.S. at 829.

In opposition, Plaintiff argues that "Title VII's exclusivity does not apply to all state law claims arising out of the same facts and circumstances" and reasserts the validity of alleging such a claim in this suit. (Doc. 16). Ms. Stallworth-Lewis finds support for her argument in case law from federal district courts in Colorado, Ohio, and Washington, D.C, and from two federal circuit courts. See Brunetti v. Rubin, 999 F. Supp. 1408 (D. Colo. 1998); Wallace v. Henderson, 138 F. Supp. 2d 980 (S.D. Ohio 2000); Stewart v. Thomas, 538 F. Supp. 891 (D.D.C. 1982); Owens v. United States, 822 F.2d 408 (3d Cir. 1987); Brock v. United States, 64 F.3d 1421 (9th Cir. 1995). However, the Fifth Circuit summarily disagrees with this approach, and we do not depart from its holdings on the matter. See, e.g., Jackson v. Widnall, 99 F.3d 710, 716 (5th Cir.1996) (citing Brown, 425 U.S. at 835) (reiterating Brown's holding that Title VII provides the exclusive remedy for employment discrimination claims raised by federal employees); see also Hampton v. Internal Revenue Serv., 913 F.2d 180, 182-83 (5th Cir.1990) (holding a federal employee's state tort claim was preempted by Title VII); Smith v. Harvey, 265 F. App'x 197, 200 (5th Cir. 2008) (affirming the district court's dismissal of a federal employee's state tort claims for lack of subject matter jurisdiction under Rule 12(b)(1) on the basis that Title VII preempted such claims). Therefore, Defendant's motion to dismiss Plaintiff's state law employment discrimination claim for lack of subject matter jurisdiction will be **GRANTED**.

B. **Plaintiff's Title VII Retaliation and Hostile Work Environment Claims**

Defendant also seeks dismissal of Plaintiff's Title VII claims for (1) retaliation and (2) hostile work environment under two different theories: (a) discrimination and harassment and (b) retaliation. First, we begin with an overview of the administrative process that must be undertaken

before filing a Title VII claim in court. Then, we will address each of Plaintiff's claims, Defendant's arguments for dismissal, and Plaintiff's arguments in opposition.

Title VII makes it unlawful for an employer to discriminate against any individual concerning "compensation, terms, conditions, or privileges of employment because of an individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Before instituting civil actions in federal district court, federal employees must exhaust available administrative remedies. Id. § 2000e–16(b). The EEOC according to its statutory authority under 42 U.S.C. § 2000e–16(b), has established clear guidelines governing the processing of federal employees' discrimination claims at the administrative stage.

First, federal employees must seek informal resolution of alleged discriminatory actions by contacting the employing agency's EEO counselor. 29 C.F.R. § 1614.105(a). The employee's contact with an EEO counselor must occur "within 45 calendar days of the date of the matter alleged to be discriminatory or, in the case of personnel actions, within 45 days of the effective date of the action." Id. § 1614.105(a)(1). The computation of the period for filing administrative complaints hinges on "when the plaintiff knows or reasonably should have known about the discriminatory event or action." Pacheco v. Rice, 966 F.2d 904, 906 (5th Cir. 1992).

Second, if the informal process with the EEO counselor does not resolve the matter, then the EEO counselor will issue a notice to the aggrieved employee advising her that she has the right to file a complaint with the EEOC within fifteen days of the receipt of the notice. 29 C.F.R. § 1614.105(d). A complainant must file a formal written charge with the EEOC before instituting a civil action in federal court under Title VII. 42 U.S.C. § 2000e–5(e). In assessing whether a charge properly exhausts a particular claim, the EEOC charge is to be construed broadly, as Title VII "was designed to protect the many who are unlettered and unschooled in the nuances of literary

9

draftsmanship." <u>McClain v. Lufkin Indus., Inc.</u>, 519 F.3d 264, 273 (5th Cir. 2008) (citing <u>Sanchez v. Standard Brands, Inc.</u>, 431 F.2d 455, 465 (5th Cir. 1970)). However, the Court will find a claim is exhausted only when it could "reasonably be expected to grow out of the charge of discrimination." <u>Sanchez</u>, 431 F.2d at 465. An employee may file a civil action "not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination." <u>Fellows v. Universal Rests., Inc.</u>, 701 F.2d 447, 451 (5th Cir. 1983).

1. *Defendant's motion to dismiss Plaintiff's retaliation claim for untimeliness should be granted.*

Adherence to filing periods for administrative complaints by federal employees is mandatory, <u>Brown</u>, 425 U.S. at 822, but these prescriptions may be displaced by equitable tolling when appropriate, <u>Teemac v. Henderson</u>, 298 F.3d 452 (5th Cir. 2002). However, such relief is inapplicable to Plaintiff's retaliation, or denial of promotion, claim. Therefore, the claim must be dismissed with prejudice. As described above, EEO regulations require that federal employees bring their claims to the attention of an EEO counselor within forty-five days of the alleged discriminatory conduct. 29 C.F.R. § 1614.105(a)(1). The procedures established under the regulations prescribe "rigorous administrative exhaustion requirement and time limitations" as a "precondition" to a federal employee's right to file a Title VII action in federal court. <u>Brown</u>, 425 U.S. at 822. Failure to abide by the requirement will bar the employee's right to assert the claim. <u>Pacheco</u>, 966 F.2d at 905. "Title VII's administrative exhaustion requirement is not a jurisdictional bar to suit but rather a prudential prerequisite under [the Fifth Circuit's] binding precedent . . . ." <u>Davis v. Fort Bend Cnty.</u>, 893 F.3d 300, 308 (5th Cir. 2018). "The purposes of this exhaustion doctrine [are] to facilitate the administrative agency's investigation and conciliatory functions and

10

to recognize its role as primary enforcer of anti-discrimination laws." Id. at 307 (citing Filer v. Donley, 690 F.3d 643, 647 (5th Cir. 2012)) (internal quotation marks omitted).

For Title VII discrimination and retaliation claims, alleged discriminatory conduct outside the relevant statutory period for filing an EEOC charge cannot serve as the factual basis for that complaint. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 105 (2002). The "discrete act of discrimination or retaliation" can be traced to "the date that it 'happened,'" and are otherwise time-barred. Id. This remains true "even when they are related to [other discrete] acts alleged in timely filed charges." Id. at 113. "Each discriminatory act starts a new clock for filing charges alleging that act." Id.

Here, the Court construes (and both parties agree) the act that should have prompted Plaintiff to seek informal resolution of the retaliation matter to be her denial of promotion. However, the parties disagree on the exact date and the nature of the failure to promote, i.e., whether the act was "discrete," (Doc. 8-1), or a "continuing violation" that "occurred over a period of months," (Doc. 16). Defendant argues that Ms. Stallworth-Lewis was denied promotion either on March 17, 2021 or April 20, 2021 at a meeting between her and her supervisors, Ms. Broussard and Mr. Waters. (Doc. 8). Plaintiff claims that she "was not advised of a denial of promotion" at a meeting held on April 13, 2021 between her and Ms. Broussard. (Doc.16) However, Plaintiff alleges in her complaint that she amended her EEO complaint on June 1, 2021 to reflect that she was denied promotion to the Step 11 Loan Specialist position "[b]eginning March 17, 2021" and continuing through August 2021. (Docs. 1, 16).

Based on the information in Plaintiff's complaint, Defendant's exhibits attached to his motion to dismiss, and Plaintiff's response in opposition, the Court construes at least three separate instances where Ms. Stallworth-Lewis could have reasonably known of her nonselection for the

promotion: March 17, April 13, and April 20, 2021. This means that she should have contacted an EEO counselor within 45 days of *each* of the above dates, *i.e.*, May 1, May 28, or June 4, 2021. Plaintiff did contact an EEO counselor on March 22, 2021 about the "reprisal, retaliation, harassment, and cyberbullying" she allegedly endured from the IT staff. (Doc. 8-7). However, the EEO counselor's report does not indicate that Ms. Stallworth-Lewis shared concerns about "non-selection" or a failure to promote. (Doc. 8-7). Even when Plaintiff filed a formal EEO complaint on June 1, 2021, she did not include any mention of a denial of promotion. (Doc. 8-8). The formal complaint only recited claims of cyberbullying, harassment, and retaliation. (Doc. 8-8). It was not until August 25, 2021 when Plaintiff sought amendment of her June 1 EEO complaint that she wished to include a nonselection claim. (Doc. 8-10). The acceptance and ultimate referral of the amendment by Kelli Reynolds, the Director of the Employee Complaints Division of the Center for Civil Rights Enforcement at RD, via a letter dated September 2, 2021 has no bearing on the timeliness of Plaintiff's claim. (Doc. 8-11). The Court notes and does not condone the egregious tardiness of Ms. Broussard's issuance of *written* reasons for denying Ms. Stallworth's promotion— more than one year after she first requested the promotion. But, as discussed above, Ms. Stallworth-Lewis should have reasonably known on at least three occasions that she should have contacted an EEO counselor to address the nonselection claim. The date Ms. Broussard emailed Plaintiff her written reasons for denying promotion does not control for the purposes of determining when time accrued for Ms. Stallworth-Lewis to contact an EEO counselor. Consequently, her retaliation claim is time-barred, and Defendant's motion to dismiss this claim with prejudice will be **GRANTED**.

> 2. *Defendant's motion to dismiss Plaintiff's hostile work environment claim for failure to adequately allege a claim should be granted. However, Plaintiff may amend her complaint.*

Additionally, Defendant seeks dismissal of Plaintiff's hostile work environment claim, which springs from Plaintiff's allegations of race-based discrimination and harassment. (Doc. 8). Defendant primarily argues that Plaintiff "cannot establish a *prima facie* case of harassment or hostile work environment," but this is not the legal standard imposed on Plaintiff at the motion to dismiss stage. On a Rule 12(b)(6) motion to dismiss for failure to state a claim, Plaintiff need only meet the Twombly-Iqbal plausibility standard. In other words, Ms. Stallworth-Lewis only needs to sufficiently plead facts in her complaint that would lead a reasonable person to conclude that discovery will reveal evidence of the ultimate elements of her hostile work environment claim. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002) ("The prima facie case under McDonnell Douglas [Corp. v. Green, 411 U.S. 792 (1973)] . . . is an evidentiary standard, *not a pleading requirement*.") (emphasis added); see also Scheuer, 416 U.S. at 236 ("When a federal court reviews the sufficiency of a complaint, before the reception of any evidence by either affidavit or admissions, its task is necessarily a limited one. The issue is not whether the plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.").

Ms. Stallworth-Lewis contends that the "discrimination, harassment, and cyberbullying" she suffered at the hands of management and IT staff was based on race. (Doc. 1). A key aspect of a hostile work environment claim is a plaintiff's allegation that an employer has created "a working environment heavily charged with discrimination." Raj v. La. State Univ., 714 F.3d 322, 330-31 (5th Cir. 2013). Therefore, surviving the motion to dismiss requires a plaintiff to plead facts linking her alleged harassment with her protected characteristic. See id.

13

In her complaint, Plaintiff claims that "management[] and the Information Technology (IT) staff ignored her requests to fix her [computer] connection and communication issues" and instead, they "laughed at her, said she sounded like a 'robot,' suggested there was a 'voice modulator on her phone line[,] and humiliated her in the presence of staff . . . .'" (Doc. 1). Much of the harassment Plaintiff alleges centers around a less-than-prompt response to her requests for technical assistance while working from home at the height of the COVID-19 pandemic rather than targeted discriminatory behavior, *e.g.*, a supervisor hurling racial epithets or slurs at an employee. See, e.g., Papa v. Capital One Nat'l Ass'n, No. 21-1589, 2022 WL 15045508, at *4 (Oct. 25, 2022) (where the court found that plaintiff's assertion that her supervisor used "racially derogatory epitaphs [*sic*] frequently in the public setting," even without including which slurs were used in her complaints, sufficiently linked the supervisor's allegedly hostile treatment of the plaintiff to the plaintiff's race). Nothing from the face of the complaint provides an adequate nexus between management and the IT staff's treatment of Plaintiff and her status as an African American. Whether the comments about Ms. Stallworth-Lewis's voice were descriptive or intentionally rude and caustic, they do not constitute harassment that would create an abusive or hostile work environment. See Raj, 714 F.3d at 331.

Plaintiff's complaint does not contain factual allegations sufficient to raise a reasonable expectation that discovery will reveal evidence of each element of her claim. Accordingly, Defendant's motion to dismiss Plaintiff's hostile work environment claim based on discrimination and harassment will be **GRANTED**, subject to the following:

Plaintiff requested leave to amend her complaint. Rule 15(a) states that district courts "should freely give leave [to amend] when justice so requires." "[T]he language of this rule 'evinces a bias in favor of granting leave to amend,' [and] a district court must possess a

14

'substantial reason' to deny a request." SGIC Strategic Glob. Inv. Cap., Inc. v. Burger King Europe GmbH, 839 F.3d 422, 428 (5th Cir. 2016) (internal citations omitted). Among the factors the Fifth Circuit requires us to consider are "undue delay," "futility of the amendment," and "undue prejudice to the opposing party." See id. Given the early stages in litigation, we find that Ms. Stallworth-Lewis's request to amend her complaint to reflect the timeline and nature of the complained-of events more accurately is appropriately and timely raised. Also, should Plaintiff describe instances where racial animus was explicit or can be inferred from the face of the complaint, the amendment would not be futile as it would reasonably lead to the discovery of evidence to support such claims. Finally, Defendant would not be unduly prejudiced by allowing Plaintiff's amendment to proceed, as he is not barred from reurging similar arguments and submitting evidence to rebut Ms. Stallworth-Lewis's amended complaint or subsequent discovery. Therefore, the motion for leave to amend will be **GRANTED** only as to Plaintiff's surviving claim in this action—hostile work environment based on discrimination and harassment. Such amendment must be filed within **FIFTEEN (15) DAYS** of this ruling.

3. *Because the Fifth Circuit does not recognize retaliatory hostile work environment claims, Defendant's motion to dismiss Plaintiff's hostile work environment claim based on a theory of retaliation should be granted.*

Finally, in the complaint, Ms. Stallworth-Lewis alleges that she was subject to "unwelcome harassment/hostile work environment in the workplace based in [*sic*] *retaliation* for complaints of retaliation." (Doc. 1) (emphasis added). While the Fifth Circuit recognizes hostile work environment claims brought under a theory of harassment premised on an employee's membership in a protected class, no such hostile work environment claim exists where the basis is retaliation. Compare Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002) (identifying the factors needed to establish "a Title VII violation based on race discrimination creating a hostile work

environment") with Montgomery-Smith v. George, 810 F. App'x 252 (5th Cir. 2020) ("This circuit has not recognized a retaliatory hostile work environment cause of action, though twelve circuits have."); Bryan v. Chertoff, 217 F. App'x 289, 293 (5th Cir. 2007) (declining to "recognize a retaliatory hostile work environment" cause of action). Accordingly, Defendant's motion to dismiss Plaintiff's retaliatory hostile work environment claim will be **GRANTED**.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's state law claim for lack of jurisdiction is **GRANTED**, and Defendant's motion to dismiss Plaintiff's retaliation claim for untimeliness is also **GRANTED**. Accordingly, Plaintiff's claims stemming from Louisiana employment discrimination law or Title VII violations based on retaliation or a retaliatory hostile work environment are **DISMISSED WITH PREJUDICE**. Additionally, Defendant's motion to dismiss Plaintiff's claim of hostile work environment based on discrimination and harassment is **GRANTED** for failure to state a claim, but the claim is **DISMISSED** subject to the right of Plaintiff to amend within **FIFTEEN (15) DAYS** of this ruling and order. Finally, Plaintiff's request for leave to amend her complaint is **GRANTED** only as to the hostile work environment claim and as limited by this ruling.

**THUS DONE AND SIGNED** at Alexandria, Louisiana this ___5___ day of April 2023.

DEE D. DRELL, SENIOR JUDGE
UNITED STATES DISTRICT COURT

16